FIDELITY TITLE SERVICE, APPELLANT, *v.* BALL HOMES, INC.; C.V. PERRY & CO., APPELLEE.

(No. 84AP-69 — Decided June 20, 1985.)

APPEAL: Court of Appeals for Franklin County.

*Hilliard, Ramsey & Drexel* and *Robert A. Ramsey,* for appellant.

*C. William Malone,* for appellee.

NORRIS, J. Plaintiff, Fidelity Title Service, appeals from the judgment of the Franklin County Municipal Court dismissing its complaint as to defendant C. V. Perry & Co.

The record reveals that plaintiff filed a complaint on February 3, 1983 against Ball Homes, Inc. and C. V. Perry & Co. in the Franklin County Municipal Court based upon a promissory note assigned to plaintiff by the original payee, Buckeye Services Corp. Ball Homes filed an answer to the complaint confessing judgment on the note in favor of plaintiff in the amount of $5,197.43, that being the principal and interest due. A judgment entry was filed by the trial court that same day granting plaintiff judgment against defendant Ball Homes, Inc. for the amount confessed. No appeal has been taken from that judgment.

The remaining two parties proceeded to trial before the court. The testimony presented at trial indicated that C. V. Perry & Co., an Ohio corporation duly licensed as a real estate broker, was involved in selling lots and homes in the Indian Trails Subdivision, south of Grove City, and, in particular, was attempting to sell lots owned by Buckeye Service Corp. ("BSC"), a wholly owned subsidiary of Buckeye Federal Savings & Loan Association ("BFSL"). Negotiations were entered into between BSC and Ball Homes to purchase Lot No. 255. The contract price on the lot was listed at $15,500. An offer was made by Ball Homes with a contingency requiring a loan from BSC to Ball Homes for $3,875 secured by a vendor's lien on the lot. BSC, however, originally felt that the offer was not acceptable because questions had arisen concerning Ball Homes' financial status. John Lilly, an assistant vice president for BSC,

testified that Orin Morris, of C. V. Perry & Co., contacted him and asked if BSC would accept the offer if C. V. Perry & Co. cosigned on the note. The note was thereafter drawn with Ball Homes and C. V. Perry & Co. signing as comakers and the vendor's lien was included in the warranty deed filed on January 2, 1981. The note provided for payment to be due in full "upon closing on sale of the house to be constructed on the below described lot or one year from the date of this Note, whichever event first occurs."

The house constructed by Ball Homes was sold to Robert L. and Natalie K. Egan, and the closing was held on July 17, 1981. The Egans were issued a mortgage loan through BFSL and a title insurance policy was provided to BFSL and the Egans through plaintiff, Fidelity Title Service. The policy, however, did not indicate an exemption for the vendor's lien arising out of the promissory note. The note was not paid at the closing and the lien remained in effect until its discovery over one year later by BSC and BFSL. Lilly testified that the note and lien were assigned on February 1, 1983 to plaintiff for $5,197.43. A release was included from BFSL and BSC releasing plaintiff from all claims, demands, damages and actions arising out of any claims for satisfaction of the vendor's lien originally held by BSC.

Plaintiff argued at trial that C. V. Perry & Co. ("defendant") was a cosigner on the note with Ball Homes and, as such, was jointly and severally liable under the terms of the note. It was admitted by plaintiff that Ball Homes had paid $1,000 on the note; therefore, the balance claimed was reduced to $4,197.43. Defendant argued in response that it was asked by BSC to lend its credit to Ball Homes on the note, and that it executed the note pursuant to that request as an accommodation maker. Further, defendant argued that plaintiff was not a holder in due course

of the note, having taken the note after it was due. Therefore, under the Uniform Commercial Code, defendant, as an accommodation maker, was not liable to plaintiff on the note. Plaintiff objected at trial to the admissibility of oral testimony concerning negotiations on the note upon the basis that it violated the parol evidence rule.

The trial court rendered judgment in favor of defendant and, in its findings of fact and conclusions of law, stated that defendant was an accommodation maker; that oral proof of accommodation was admissible; that plaintiff took the note on February 1, 1983 with notice that it was overdue; that a subsequent holder for value who takes a note with notice that it is overdue is not a holder in due course and is subject to all defenses of any party; that plaintiff was not a holder in due course; and that an accommodation maker is not liable to a nonholder in due course.

Plaintiff raises the following seven assignments of error in support of its appeal:

"1. The trial court improperly found from the evidence presented that the defendant C. V. Perry & Co. was an accommodation maker.

"2. The trial court improperly failed to apply all terms of the note in determining the liability of C. V. Perry & Co.

"3. The trial court improperly found that the defendant C. V. Perry & Co. received none of the benefits or proceeds of the loan.

"4. The trial court improperly found that the defendant C. V. Perry & Co. was not liable on the note.

"5. The trial court improperly admitted oral testimony to vary the terms of the promissory note over the objections of the plaintiff appellant.

"6. The trial court improperly found that an accommodation maker of a note is not liable to [a] subsequent nonholder in due course.

"7. The trial court improperly admitted testimony and/or improperly overruled the objection thereto by plaintiff-appellant on the non-performance of a condition precedent."

Because all seven of plaintiff's assignments of error deal with defendant's liability under the promissory note, and the evidence relied upon to reach that conclusion, they will be considered together.

An accommodation maker, under the Uniform Commercial Code as adopted by Ohio, is defined as a party "who signs the instrument in any capacity for the purpose of lending his name to another party to it." R.C. 1303.51(A) (UCC 3-415[1] ). By doing so, the accommodation party provides another type of security for a creditor by joining himself as a third party on the debtor's obligation. He acts as a surety and obligates himself to answer for the debt on default of the debtor. Once he has attached his name to the instrument, R.C. 1303.51(B) recognizes that he is "liable in the capacity in which he has signed * * *." Therefore, an accommodation maker's basic liability to a holder is identical to that of any other maker, the only distinction being that his status as an accommodation maker provides him with special defenses unavailable to the general run of parties to an instrument. White and Summers, Uniform Commercial Code (1980 2 Ed.), Section 13-12.

Usually, proof of the status of an accommodation maker is established by the specific language he adds to his signature, or the position of his signature on the instrument. However, in certain circumstances, oral proof is admissible to prove the accommodation character of a party where no such indication appears in the instrument. R.C. 1303.51(C) (UCC 3-415[3] ) states:

"As against a holder in due course and without notice of the accommodation oral proof of the accommodation is not admissible to give the accommodation party the benefit of discharges dependent on his character as such. In other cases the accommodation character may be shown by oral proof."

This rule had been recognized in Ohio prior to the adoption of UCC 3-415. Oral evidence was allowed to be admitted to establish the actual relation of the parties who signed the instrument and to show that a party was, in fact, a surety. *Oldham* v. *Broom* (1875), 28 Ohio St. 41; *Baker & Brim, Admrs.* v. *Kellogg* (1876), 29 Ohio St. 663, 665; *McKee* v. *Hamilton* (1877), 33 Ohio St. 7; *Hecker* v. *Mahler* (1901), 64 Ohio St. 398.

In the instant case, a review of the promissory note signed by plaintiff and defendants fails to indicate the status of C. V. Perry & Co. other than as a cosigner. Defendant, however, offered testimony from Orin Morris, vice president of the company, that the note was signed with the intention that defendant was only a surety for the principal debtor, Ball Homes, Inc. Morris testified that defendant agreed to lend its name to the transaction involving the purchase of the lot and signed the note with that understanding. BSC had previously indicated to defendant that they would not take the note from Ball Homes, but would accept the note and a vendor's lien on the property if C. V. Perry & Co. signed as a comaker. Morris also stated that part of the inducement to sign the note was a promise from BSC that the note would be paid off through collection of the vendor's lien.

As previously noted, parol evidence is admissible under R.C. 1303.51(C) to establish the accommodation character of a party to the note. However, admissibility is not allowed under the statute where the holder is a holder in due course and takes without notice of the accommodation. A holder in due course is defined under R.C. 1303.31(A)(3) (UCC 3-302[1][c]) as "[a] holder * * * who takes the instrument * * * without notice that it is overdue or has been

dishonored or of any defense against or claim to it on the part of any person."

In its decision, the trial court found that the closing referred to in the note occurred on July 17, 1981, and that the note was not paid at that time nor was the vendor's lien extinguished. Therefore, plaintiff took the note on February 1, 1983 with notice that it was overdue, and did not become a holder in due course. Plaintiff challenges the trial court's findings by arguing that the note. was not, in fact, overdue at the time of the transfer. İt cites a specific provision in the note which reads, as follows:

"From time to time, without affecting the joint and several obligation of all makers, sureties, guarantors and endorsers and their successors or assigns to pay the outstanding principal balance hereon and accrued interest thereon, and observe the covenants contained herein, *without giving notice to or obtaining the consent of any maker, surety, guarantor, endorser or their successors or assigns and without liability on the part of the holder hereof, the holder hereof may, at its options, extend the time for payment of the outstanding principal balance hereon and accrued interest thereon, or any part thereof,* release anyone liable for payment hereon, accept a renewal of this Note, modify the terms and time of payment hereon, join in any extension or subordination agreement, release any security given herefor, take or release additional security, or modify the rate of interest hereon." (Emphasis added.)

Under the language referred to above, BSC had the right to extend the time for payment without giving notice to, or obtaining the consent of, the defendants. It would appear from a reading of the quoted language that the note was not overdue and that BSC as well as plaintiff, as holders of the note, could have extended the date of payment indefinitely. In addition, by signing the note, defendant consented to allow

such an extension. See R.C. 1303.72 (UCC 3-606). However, the Uniform Commercial Code places certain limitations on open-ended clauses providing for an extension of time for payment. R.C. 1303.17(F) (UCC 3-118[f]) provides:

"Unless otherwise specified, consent to extension authorizes a single extension for not longer than the original period. A consent to extension, expressed in the instrument, is binding on secondary parties and accommodation makers. A holder may not exercise his option to extend an instrument over the objection of a maker or acceptor or other party who in accordance with section 1303.70 of the Revised Code tenders full payment when the instrument is due."

Without specifying the duration of the extension allowable under the terms of the note, R.C. 1303.17(F) provides for only a single extension not longer than the original period. Here, the note, as signed on January 2, 1981, required payment on the date of closing or within one year from the date of the note, whichever was sooner. The closing occurred on July 17, 1981, thus, establishing the date of payment as July 17, 1981. The period of the note was set at six and one-half months, from January 2, 1981 to July 17, 1981. Therefore, under R.C. 1303.17(F), any extension of the note could only prolong the date of payment until mid-January 1982. An extension beyond that period would not be covered by the consent provision in the note. Since the note was transferred on February 1, 1983, and still had not been paid, it was at that time overdue.

Even though plaintiff took the note after it was due, it is essential to point out that this does not necessarily mean that plaintiff took the note with "notice" that it was overdue. The holder or purchaser of an instrument that is, in fact, overdue may still be a holder in due course if he takes it without notice that

it is overdue. Official Comment 7 to UCC 3-304 (R.C. 1303.33); Official Comment 1 to UCC 3-302 (R.C. 1303.31). R.C. 1301.01(Y) (UCC 1-201[25]) provides that a person takes with notice of a fact when "he has actual knowledge of it; or * * * from all the facts and circumstances known to him at the time in question he has reason to know that it exists."

In light of the provision in the note providing for a specific date for payment, and R.C. 1303.17(F), which specifically limits the length of any extension taken under the consent provision, plaintiff had reason to know that the note was overdue at the time of transfer. This conclusion is also supported by the fact that transfer of the note was not made until over one year after the original date for payment, putting plaintiff on notice of an extension and the legalities of such action on the part of the original payee. Therefore, the record supports the conclusion that plaintiff took the note with notice that it was overdue and, as a result, plaintiff was not a holder in due course.

Since plaintiff was not a holder in due course, it was proper for the trial court to admit the parol evidence establishing defendant's status as an accommodation maker. This includes testimony by Morris concerning the promise by BSC that payment of the note would be through collection of the vendor's lien since he testified that defendant relied upon that promise in agreeing to lend its name to Ball Homes and to sign the note as an accommodation maker.

Plaintiff contends that, since the evidence shows that defendant received a benefit in the form of commission from the sale of the lot and from the later sale of the home, its status was that of a principal obligator and not as an accommodation party for a comaker. Certainly, evidence that the party to the instrument has received the proceeds from it,

or derived benefits from the application of the proceeds, may support a finding that the party is not an accommodation maker; however, it is not conclusive on that point. See Annotation, Who Is Accommodation Party Under Uniform Commercial Code § 3-415 (1979), 90 A.L.R. 3d 342. In addition, there was no evidence presented that defendant received any of the actual proceeds from the note. The benefit that it received, if any, was indirect. Defendant would not have received its commission from the sale of the lot or the subsequent sale of the home had BSC refused to take the note, but, when one considers the testimony concerning the negotiations between the parties, this fact alone could not defeat the intentions of the parties that defendant was signing the note only as an accommodation maker.

Next, it is necessary to turn to the conclusion reached by the trial court that an accommodation maker is not liable to a subsequent non-holder in due course. R.C. 1303.51(B) (UCC 3-415 [2]) states:

"When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation."

It should be noted that R.C. 1303.51 makes no mention of a holder in due course except in regard to the use of parol evidence to establish that a party has signed as an accommodation maker. In support of the trial court's judgment, defendant cites the following excerpt from 40 Ohio Jurisprudence 2d (1967), Negotiable Instruments, etc., Section 369, at pages 453-454:

"The Uniform Commercial Code adopts the position that there can be no recovery from an accommodation party in any instance where the person taking the instrument has notice that the instrument is overdue. The Code provides with respect to the liability of an accom-

modation party that when the instrument has been taken for value before it is due, the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation. The Code also sets as one of the basic tests of a holder in due course that he is a holder who takes the instrument without notice that it is overdue. It therefore follows that a person taking with notice that the instrument is overdue is not a holder in due course and, since an accommodation party is liable only when the instrument has been taken for value before it is due, such a party is not liable to a person who is not a holder in due course." (Footnotes omitted.)

We are unable to find any cases or other legal authority which specifically support this interpretation of R.C. 1303.51(B). The problem centers around the language in the statute which states, "[w]hen the instrument has been taken for value before it is due * * *." Defendant contends that this means that an accommodation maker is automatically discharged once the note is taken after it is due. However, such an interpretation is not supportable when viewed in a more practical standpoint. Take, for instance, the example found in Peters, Suretyship Under Article 3 of the Uniform Commerical Code (1968), 77 Yale L. J. 833, 845-846:

"* * * Suppose, first, that $A$ is an accommodating co-maker for $B$ on a promissory note for $10,000 payable to the order of $C$, due six months after date. $C$ correctly pays the $10,000 consideration to $B$, who promptly disappears, physically or financially. If $C$ holds the paper until maturity, there is no doubt that $C$ can recover from $A$. But suppose that $C$ negotiates the paper to $D$, who in turn negotiates it to $E$, who holds it until maturity. When $E$ discovers that $B$ will not pay, he is likely to have recourse to $D$. What is the situation if $D$, the paying indorser, having

satisfied $E$, now wants to hold the surety, $A$, responsible? Although $D$ has taken the instrument for value from $E$, nonetheless, by paying $E$ he has himself taken it after maturity. In order to protect $D$'s right of recovery, which seems eminently reasonable and totally consistent with $A$'s commitment to negotiable paper, it seems preferable to adopt a construction of the 'when' clause which attributes its stipulations to conditions of issue. So read, $C$'s timely taking shores up $D$'s claim, whereas on the alternate reading $D$, taking solely in his own right, might be time-barred." (Footnote omitted.)

A more reasonable interpretation of the "when" clause would be that it serves as a condition for initial validation of the accommodation and not as a determination of liability when the note is later acquired for value. Therefore, an accommodation party may be liable to a subsequent taker for value, even though the note is overdue, if the agreement for accommodation was enforceable at the initial issuance of the instrument. However, this does not necessarily mean that an accommodation maker loses all defenses to the instrument, especially, as in this case, where the taker is not a holder in due course.

The trial court concluded that because plaintiff was a non-holder in due course it took the note subject to all defenses of any party which would be available in an action on a single contract or for nonperformance of any condition precedent. This is in line with R.C. 1303.35 (UCC 3-306), and the rights enunciated therein of one not a holder in due course. In the instant case, BSC's failure to fulfill its obligation to seek payment of the note through collection of the vendor's lien existed as a defense against enforcement of the note. Evidence was submitted that no attempt was made to collect on the vendor's lien and, thus, there was a breach of the accommodation agreement. Accordingly,

the trial court was not in error when it concluded that defendant was not liable to plaintiff as an accommodation maker on the note.

Therefore, plaintiff's seven assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY, P.J., and STRAUSBAUGH, J., concur.